NOTICE
Decision filed 05/09/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230152

NO. 5-23-0152

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| *In re* ESTATE OF WILLIAM A. CASE, Deceased ) | Appeal from the |
| ) | Circuit Court of |
| (Donna Watson, ) | Vermilion County. |
| ) | |
| Petitioner-Appellant, ) | |
| ) | |
| v. ) | No. 20-P-170 |
| ) | |
| Thomas Pichon, Individually; ) | |
| Theresa S. Young; and Mark A. Case, ) | |
| ) | |
| Respondents ) | |
| ) | |
| (Theresa S. Young, Respondent-Appellant; ) | Honorable |
| Thomas Pichon and Mark A. Case; Respondents- ) | Charles D. Mockbee IV, |
| Appellees)). ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion.
Justices Welch and McHaney concurred in the judgment and opinion.

**OPINION**

¶ 1    This case concerns the interpretation of the language of the last will and testament of William A. Case. The will at issue originally granted the petitioner, Donna Watson, and the decedent's two other children, Mark Case and Theresa Young, his real estate in certain specified amounts. However, the decedent later executed a codicil that granted his tenant farmer, Thomas Pichon, a "right of first refusal" to purchase the property. The parties disputed whether this "right of first refusal" to purchase the property was actually an option to purchase the property that

1

allowed Pichon to force the sale of the land. The circuit court of Vermilion County held that, despite the use of the term "right of first refusal," the plain language of the codicil clearly indicated the decedent's intent that Pichon have an option to purchase the property following his death. The circuit court also addressed several other ancillary issues. Donna Watson and Theresa Young now appeal the circuit court's order of May 9, 2022. For the following reasons, we affirm and remand for further proceedings consistent with this decision.

¶ 2                                                  I. BACKGROUND

¶ 3     The decedent, William A. Case (Decedent), died on October 10, 2020, at age 84, leaving a last will and testament dated July 26, 2012 with a codicil thereto dated October 3, 2019. Petitioner, Donna Watson, is a daughter and heir of the Decedent and a beneficiary and devisee under the will. Respondents Theresa S. Young and Mark A. Case are also children and heirs of the Decedent and beneficiaries and devisees under the will.[1]

¶ 4     The petition for admission of will to probate filed on November 25, 2020, by Thomas J. Pichon identifies Donna, Theresa, and Mark as the only heirs and legatees of the Decedent. Decedent's will and codicil were admitted to probate, and letters of office were issued naming Pichon as independent executor of the Decedent's estate. Later, the circuit court entered an order terminating the independent administration, which was not provided for under the will or codicil.

¶ 5     The will provides in section II:

"I will devise and bequeath all the property owned by me at the time of my

death of whatsoever kind and character, and wheresoever situated, as follows:

a. To Mark: 115.5 acres in BLNT 0616 and 0613 ('Mark's Land'),

---

[1]To avoid confusion due to some last names in common, we refer to the Decedent's children by their first names.

b. To Theresa: 110.5 acres in BLNT 0608, 0607, 0612, 0612A and 0595 ('Theresa's Land'),

c. To Donna: 119.5 acres in BLNT 0618, 0614, and 0615 ('Donna's Land'),

d. To Mark, Theresa and Donna jointly: 80 acres in MDFK 0850A ('80 Acres'), and

e. To Mark, Theresa and Donna: all of Decedent's personal property, including bank accounts and investments except for investments designated a P.O.D. to other individuals."

¶ 6 The Decedent's codicil provides:

"FIRST: I hereby modify Paragraph II of my said Will as follows:

'I hereby grant Thomas Pichon a right of first refusal to purchase any of the following described parcels of land at their respective appraised value(s).' 'In the event Thomas Pichon does not exercise such right of first refusal, then,' shall be inserted before the language 'I will, devise and bequeath all the property owned by me at the time of my death of whatsoever kind and character, and wheresoever situated, as follows:'

SECOND: I hereby modify Paragraph III of my said Will as follows:

'I hereby nominate and appoint Thomas Pichon to be Executor of This My Last Will, but if he would be unable or unwilling to act as Executor or as Trustee, then I nominate Carolyn J. Pichon, to serve as such Executor and Trustee. I direct that neither Thomas Pichon nor Carolyn J. Pichon be required to furnish any bond.'

THIRD: in all other respects, I republished, and confirmed the provisions of my said Will."

3

¶ 7     The codicil named Pichon to be executor, replacing Donna. Pichon was the tenant farmer on Decedent's land and continued to be the tenant farmer following Decedent's death.

¶ 8     On January 21, 2021, Donna filed a petition for declaratory judgment against Pichon asking the circuit court to construe the codicil and find that Pichon could not purchase Decedent's land. In that petition and in her amended petition filed March 22, 2021, Donna alleged (1) that Pichon had obtained appraisals of the Decedent's land, (2) that Pichon believed he had the right to purchase said land based upon the language contained in the codicil, and (3) that he intended to purchase said land. In his response, Pichon admitted these allegations.

¶ 9     A petition to sell and an attached agreement were filed together on August 3, 2021, in connection with Mark's agreement to sell to Pichon certain land identified for him in the will and codicil if Pichon did not exercise his rights. The estate was supervised at the time the petition to sell was filed. The petition to sell contained an error of the description of Mark's land in paragraphs 7, 9, and 10, where elsewhere in the petition to sell and related documents the correct description was used. In paragraphs 7, 9, and 10, a parcel of land that Donna would receive if Pichon did not exercise his right to purchase was used. The order signed by the circuit court specifically authorized the sale of the land identified for Mark but also included the mistaken description of Donna's land.

¶ 10    Donna filed a motion for summary judgment on July 29, 2021. Pichon filed a cross-motion for summary judgment on March 11, 2022. Theresa filed a motion in support of Donna's motion for summary judgment on December 3, 2021. Mark did not file a related motion. All motions argued the parties' positions regarding the interpretation of the right given to Pichon in the codicil and other ancillary issues discussed in more detail below.

¶ 11 The circuit court entered its order on May 9, 2022. The circuit court addressed the issue of whether the right granted to Pichon in the codicil was a "right of first refusal" or an "option." The circuit court found that the right was not a right of first refusal but an option, noting: "This matter is not so much about what something is called, in this case an Option or a Right of First Refusal[;] it is about the intention of [Decedent]." The circuit court then granted Pichon's motion for summary judgment and denied the respondents' motions for summary judgment. Respondents filed a motion for reconsideration on June 8, 2022, and an amended motion to reconsider on June 30, 2022. On February 7, 2023, the circuit court denied the motion to reconsider. Donna then filed her notice of appeal on March 8, 2023, and Young filed her notice on March 9, 2023.

¶ 12                                    II. ANALYSIS

¶ 13 Donna and Theresa raise several issues on appeal; however, we first address the circuit court's interpretation of the language of the codicil, as that issue effects the remaining issues.

¶ 14 The law pertaining to a court's interpretation of the language of a will or codicil is well settled in Illinois. We previously articulated the relevant applicable law in *In re Estate of Siedler*, 2019 IL App (5th) 180574, ¶¶ 22-24, as follows:

> "It is well established that, in interpreting a decedent's will, 'the intention of the testator as expressed in the will must be ascertained and given effect if not prohibited by law.' [Citation.] This is the 'paramount rule' to which 'all others must bend.' [Citation.] The courts 'always look upon the intention of the testator as the polar star to direct them in the construction of wills.' (Internal quotation marks omitted.) [Citation.] Nearly 100 years ago, the supreme court described this rule of law as 'so well settled in this state as to require no citation of authority.' [Citation.] Accordingly, the focus of our analysis in interpreting [Decedent]'s will is giving

effect to his intent, and the question on appeal is whether the trial court's construction of the will gives effect to his intent. [Citation.]

The language of a will is the best proof of the testator's intent. [Citation.] 'Words used in a will are to be given the meaning which the testator intended they should have' and are 'understood in their ordinary sense unless a different meaning is indicated by the context.' [Citation.] Also, '[i]f possible, the court should construe the will or trust so that no language used by the testator is treated as a surplusage or rendered void or insignificant.' [Citation.]

If the language of a will is clear and unambiguous, extrinsic evidence is not admitted to vary that language. [Citation.] However, where latent ambiguities exist in the will, extrinsic evidence will be considered to determine the testator's intent. [Citation.]"

¶ 15 Here, the parties agree that the language of the codicil is clear and unambiguous, and while one of the parties submitted an affidavit by the attorney who drafted the codicil and witnessed the execution of the document to support their interpretation of the language, that affidavit was ultimately stricken and not considered by the circuit court. Under such circumstances, the interpretation of Decedent's codicil involves a question of law that we review *de novo*. *In re Estate of Williams*, 366 Ill. App. 3d 746, 748 (2006).

¶ 16 It is undisputed that Decedent's codicil gave Pichon the right to purchase his property. The issue between the parties lies in the nature of that right. Ultimately, the circuit court found that the right conferred to Pichon by Decedent's codicil was that of an "option" as opposed to a "right of first refusal."

6

¶ 17    Decedent's will initially devised his property to his three children. The will outlined the manner in which his land was to be allocated to them. However, the codicil changed that. It began by stating, "I hereby modify Paragraph II of my said Will, as follows[.]" This line indicated Decedent's decision and intent to alter his will. He then articulated the modification as follows: "I hereby grant Thomas Pichon a right of first refusal to purchase any of the following described parcels of land at their respective appraised value(s)." It then went on to state:

> " 'In the event Thomas Pichon does not exercise such right of first refusal, then,' shall be inserted before the language 'I will, devise and bequeath all the property owned by me at the time of my death of whatsoever kind and character, and wheresoever situated, as follows[.]' "

Thus, following this modification, the first section of paragraph II of the will now reads:

> "I hereby grant Thomas Pichon a right of first refusal to purchase any of the following described parcels of land at their respective appraised value(s). In the event Thomas Pichon does not exercise such right of first refusal, then, I will, devise and bequeath all the property owned by me at the time of my death whatsoever kind and character, and wheresoever situated, as follows[.]"

¶ 18    Donna and Theresa argue that this modification gave Pichon a "right of first refusal" as that term is understood in its technical and legal sense. Pichon argues that this modification gave him an "option" to purchase the property and that the term "right of first refusal" as used in the codicil was not being used in its technical sense but as a general description of him having the right to first decide whether to purchase the property before it was devised to Decedent's children.

¶ 19    To discuss the issue further, we need to first define an "option" and a "right of first refusal." These terms were defined in *Kellner v. Bartman*, 250 Ill. App. 3d 1030, 1034-35 (1993), as follows:

7

"An option is defined as:

> 'A right, which acts as a continuing offer, given for consideration, to purchase or lease property at an agreed upon price and terms, within a specified time. An option is an agreement which gives the optionee the power to accept an offer for a limited time. [Citation.] An option to purchase or to sell is not a contract to purchase or sell, as optionee has the right to accept or to reject the offer, in accordance with its terms, and is not bound. [Citation.]' [Citation.]

A right of first refusal, also referred to as a preemptive right, is a condition precedent to the sale of the property. A right of first refusal is not an option in that the holder of the right cannot force the sale of the property at a stipulated price. [Citation.] Instead, the right does not arise until the grantor notifies the holder of a desire to sell or until offering or contracting to sell to a third party without first giving the holder of the right of first refusal the opportunity to buy. [Citation.] Oftentimes a right of first refusal is a right to elect to take specified property at the same price and on the same terms and conditions as are contained in a good-faith offer to purchase made by a third party. [Citations.]

The right of first refusal need not specify the price and terms, as long as it provides a method whereby the price and terms may be ascertained. [Citation.] Many terms and conditions of the sale upon the exercise of the right of first refusal may be supplied by implication or custom. [Citation.]"

¶ 20    Therefore, the central distinction between the two, and the reason for the disagreement, is whether Pichon was given the right to force the sale of the property or needed to wait until Donna and Theresa were ready and willing to sell and had a *bona fide* offer.

¶ 21    As outlined in the caselaw above, a court's duty is to determine the testator's intent and give effect to that. "The language of a will is the best proof of [the testator's] intent." *Coussee v. Estate of Efston*, 262 Ill. App. 3d 419, 423 (1994). "Words used in a will are to be given the meaning which the testator intended they should have" and are "understood in their ordinary sense unless a different meaning is indicated by the context." *Andrews v. Applegate*, 223 Ill. 535, 537, 538 (1906). "If possible, the court should construe the will or trust so that no language used by the testator is treated as surplusage or rendered void or insignificant." *Harris Trust & Savings Bank v. Donovan*, 145 Ill. 2d 166, 172 (1991).

¶ 22    We acknowledge that typically, when a will or codicil uses the term "right of first refusal," we would give the technical meaning of that term and apply it. However, here, we agree with the circuit court that the plain language of the codicil refutes the technical meaning of that term. As our courts have noted, technical words should not be applied if they were used in a manner that made it clear the testator did not mean to use them in their technical sense. *Gridley v. Gridley*, 399 Ill. 215, 223 (1948).

¶ 23    Here, the language explicitly states that, "*In the event* Thomas Pichon does not exercise such right of first refusal, *then*, I will, devise and bequeath all the property." (Emphases added.) It is evident that under the plain language of the codicil Pichon was first required to make his determination as to whether he would purchase the property; *then*, only if Pichon did not buy the property, it would pass to the devisees. This requirement is contrary to the nature of a technical "right of first refusal" in which "the right *does not arise until* the grantor *notifies the holder of a*

9

*desire to sell*." (Emphases added.) *Kellner*, 250 Ill. App. 3d at 1034. In order to find that the right given to Pichon was a "right of first refusal," we would have to ignore this entire sentence. And as previously stated, "[i]f possible, the court should construe the will or trust so that no language used by the testator is treated as surplusage or rendered void or insignificant." *Harris Trust & Savings Bank*, 145 Ill. 2d at 172.

¶ 24 This understanding of Decedent's intent is further bolstered by the placement of the modifications, which put all this language before the language that gave any property to the devisees. If Decedent had wanted to create a true "right of first refusal," it would have been much simpler to add a paragraph following his devising of the property to his children, incorporating such a right to Pichon. Not only would that have been simpler to implement when drafting the codicil, but it would have made more sense logically, because it would mirror the way the actions would have chronologically played out in accordance with that understanding. Moreover, Decedent, in the same codicil, also modified the executor of his will and changed it from one of his devisees (Donna), to Pichon and then, if not Pichon, to Pichon's wife. As executor, Pichon was placed by Decedent in a position to carry out Decedent's instructions and sell any of the property Pichon elected to purchase at the appraised value.

¶ 25 As to the requirements of an option, Decedent's codicil gives Pichon the right to purchase a portion of, or all of, Decedent's real estate at a stipulated price, that price being the "appraised value" of the property. This "appraisal value" also refutes Donna's and Theresa's arguments that the right is a "right of first refusal," which generally does not set a stipulated price because that amount is determined by a third-party *bona fide* offer to be matched.

¶ 26 Additionally, Pichon's option has a set time frame in that Pichon had to determine if he intended to purchase the property immediately, or at least during the administration of the estate,

10

because any property he did not purchase passed to the named devisee as part of the estate administration. We note here that Pichon made his intention known at the outset of this endeavor, as indicated by the contentions set forth by Donna in her petition she filed on January 21, 2021.

¶ 27    Therefore, given the plain language outlining that Pichon had the right to decide whether to purchase the decedent's land, first, and then, if he decided not to, the land passed to the devisees, we find that the codicil gave Pichon an option, not a right of first refusal.

¶ 28    The second issue raised by Donna and Theresa is that Decedent's real estate immediately vested in the devisees under the will and codicil at the time of his death, making them the beneficiary of the income earned from the land. Donna and Theresa also argue that, because Decedent's real estate passed directly to them upon his death, somehow this impairs the right given to Pichon under the codicil. The appellants point to a number of cases to support their position, but those cases all involved a devise of property without conditions. The law of this state is that the real estate that a decedent owns or legally possesses, at the time of his death, passes directly to the heirs or devisees and "that the executor takes no title or right of possession or interest therein *unless the will by express or necessary implication so provides.*" (Emphasis added.) *Meppen v. Meppen*, 392 Ill. 30, 35 (1945); see *Emmerson v. Merritt*, 249 Ill. 538, 540 (1911).

¶ 29    Here, the codicil implies that the real estate would not vest in any of the named devisees until the option was determined, because the devising of the property only occurs after Pichon has decided not to exercise the option to purchase. See *Stern v. Stern*, 410 Ill. 377, 385 (1951) (under a will giving a testamentary option, the title to the land does not vest in the devisees with the option unless the option is exercised). Thus, because Decedent's devising of the land only occurs after Pichon chooses whether or not to exercise his option, the property does not immediately vest to the devisees.

11

¶ 30 Next, Donna and Theresa also dispute the circuit court's finding that the time for which the "appraisal value" should be determined is the date of Decedent's death. They argue that the "appraisal value" should be determined when Pichon's rights ripen. They argue that those rights don't ripen, if ever, until one of them decided to sell, keeping in line with their contention that the right is a true "right of first refusal." We determined that Pichon's right was that of an option, and thus his rights essentially ripened at the time of Decedent's death or, at the latest, at the time of the filing of the will and codicil, approximately a month later. Therefore, the language of the codicil sets the appraisal value of the real estate to be determined at the time of Decedent's death in order for Pichon to be able to make a proper determination of whether he will exercise his option. If he decided not to, then the real estate would have passed to the devisees during the administration as discussed above.

¶ 31 Finally, Donna argues that Pichon intentionally and knowingly waived any of his rights under the codicil to the land, which would pass to her based upon certain discrepancies in the petition to sell filed on August 3, 2021. We find this argument meritless.

¶ 32 The petition to sell was filed so that Pichon could purchase the land that would have been devised to Mark had Pichon not exercised his option to purchase. Mark has not challenged Pichon's right to purchase Decedent's land at any time during these proceedings and agreed to sell the land allotted to him after Decedent's death.

¶ 33 Paragraph 5 of the petition to sell states:

"That on March 19, 2021, and without regard to the right acquired the farmland in Section II granted to Thomas Pichon by the Codicil, Mark Case agreed to sell his 115.5 acres in BLNT 0616 and 0613 to Petitioner Thomas Pichon, individually and his wife Carolyn Pichon. A copy of the contract of sale is attached hereto."

12

After this paragraph, the petition to sell incorrectly identifies the land at issue as "119.5 acres in BLNT 0618, 0614, and 0615," which is the land Donna would take under the will if Pichon did not exercise his option to purchase.

¶ 34 It is obvious that this is simply a scrivener's error because paragraph 7 states:

"Petitioner as Executor seeks this Court's authorization to release the Estate's interest in *Mark Case's* 119.5 acres in BLNT 0618, 0614, and 0615, so that *Mark may conclude his sale* to Thomas and Carolyn Pichon." (Emphases added.)

Further, the attached contract for sale accurately reflected the proper legal description of the property. Moreover, the proposed release of the estate's interest to real estate that was submitted properly listed the correct description of Mark's land. Also, Theresa's objection to the petition to sell identified the 115.5 acres of Mark's land. Finally and most importantly, Donna stipulated to the petition to sell. Surely, Donna is not before us indicating that she stipulated to her land being sold to Pichon. Thus, the fact that Pichon inadvertently referenced the incorrect tract of land when waiving his interest to Mark's property under the will and codicil so as to effectuate the sale of that land cannot legitimately be argued to constitute an intentional waiver of his rights to exercise his option to Donna's land.

¶ 35 Therefore, we find that Pichon did not intentionally or knowingly waive his right to exercise his option where it was obvious from the pleadings that all of the parties' understandings, including Donna's, was that Pichon was simply attempting to effectuate the sale of Mark's property so he could purchase it.

¶ 36 III. CONCLUSION

¶ 37 For the foregoing reasons, the circuit court's May 9, 2022, order is hereby affirmed, and we remand for further proceedings consistent with this decision.

¶ 38    Affirmed and remanded.

*In re Estate of Case*, **2024 IL App (5th) 230152**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Vermilion County, No. 20-P-170; the Hon. Charles D. Mockbee IV, Judge, presiding. |
| **Attorneys for Appellant:** | Barbara L. Delanois, of Delanois Law, LLC, and Andrew C. Mudd, of Huber & Mudd, LLC, both of Danville, for appellant. |
| **Attorneys for Appellee:** | Jared Trigg, of Acton & Snyder, LLP, of Danville, and Stephen M. O'Byrne, of O'Byrne, Stanko & Jefferson, P.C., of Champaign, for appellee Thomas Pichon.<br><br>No brief filed for other appellee. |